UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARQUES AKEEM MADKINS,

Plaintiff,

v.

MOORMAN, et al.,

Defendants.

Case No. 25-cv-08288-PCP

**ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND; GRANTING APPLICATIONS TO PROCEED IN FORMA PAUPERIS**

Re: Dkt. Nos. 2, 5, 6

Marques Madkins, an inmate at California State Prison - Corcoran, filed a *pro se* civil rights action under 42 U.S.C. § 1983 regarding events that occurred while he was incarcerated at San Quentin State Prison. Dkt. No. 1 ("Compl.") For the reasons stated below, Mr. Madkins's Complaint is DISMISSED with leave to amend the claims identified below.

**Background**

As defendants, Mr. Madkins sues Nurse Moorman, Officers Varney and Hernanez, and five Doe defendants. *See* Compl. at 1, 2. All relevant events occurred at San Quentin State Prison ("SQSP"), and all defendants were employed by SQSP at the relevant time. *See generally id*.

Mr. Madkins represents that, shortly after he arrived at SQSP, staff and other inmates began to repeat to him pieces of conversations he had had over the prison payphone and over e-mail. *See id*. at 3. Mr. Madkins claims that staff eventually gave other inmates Mr. Madkins's login information, and that staff directed those inmates to log in to Mr. Madkins's tablet. *See id*. at 5. At some point, SQSP staff began to refer to Mr. Madkins as a "snitch" and "informant." *Id*. at 4.

On March 9, 2025, Mr. Madkins was placed on suicide watch. *See id*. at 4. Defendant Moorman was assigned to watch him. Mr. Madkins claims that she insulted him, threatened to expose his medical information, and took a photograph of him using her cell phone. *See id*.

On March 28, 2025, "staff directed inmates to harass" Mr. Madkins, and the situation "escalated to staff allowing 3 inmates to attack" Mr. Madkins. *Id*. at 5. Mr. Madkins was taken to a hospital where he received stitches. *See id*. While in the hospital, Mr. Madkins alleges that defendants Hernandez and Varney took photos of his injuries. *See id*.

Upon Mr. Madkins's return to San Quentin, he "was immediately attacked again by another inmate." *Id*. He alleges this attack "happened because of San Quentin staff spreading rumors calling [Mr. Madkins] an 'informant.'" *Id*.

Mr. Madkins represents that the "harassment and notoriety continues at each and every institution [he has] been to" within the California prison system. *Id.*

### Legal Standard

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### Analysis

At this time, Mr. Madkins has not stated any cognizable claim. He will be given leave to amend to state a claim for violation of the Eighth Amendment. All other claims are dismissed without leave to amend.

### I.    Claims

Mr. Madkins states that he intends to bring claims for the assaults suffered, for defamation, for failure to protect, and for exposure of his medical information. *See* Compl. at 3, 6 (listing claims).

Mr. Madkins's medical information claim is unsupported by the facts and fails as a matter of law. Although Mr. Madkins alleges that defendant Moorman *threatened* to expose his medical information, he does not allege that she *actually did so*. *See* Compl. at 4. Nor does any defendant's alleged taking of photographs state a claim for dissemination of private medical information, as

there is no allegation that any photograph ever was shown to an unauthorized individual. *See id*. at 4–5. Even if photographs were taken and disseminated, this still would not be enough to give rise to a claim. It is well-settled in the Ninth Circuit that prisoners have "no legitimate expectation of privacy in information that is not highly personal, even where the government assures confidentiality." *Doe v. Bonta*, 101 F.4th 633, 637–38 (9th Cir. 2024). Photographs taken in a non-private setting, where Mr. Madkins is subject to observation by third parties, are not so "highly personal" as to give rise to a claim. *See id*. at 637 (explaining that "'highly sensitive' personal information" is information "like medical records relating to abortion," and not biographical data). Because there is no allegation that any defendant actually shared Mr. Madkins's medical information, and even if the defendants shared photographs this would not be sufficient to give rise to a claim, this claim fails and amendment would be futile.

To the extent Mr. Madkins intends to sue unknown persons for eavesdropping on his telephone calls and emails, this claim fails as a matter of law. It is well-settled that the routine taping or monitoring of inmate phone calls does not violate the Fourth Amendment because a prisoner has no reasonable expectation of privacy in outbound calls from a prison. *See United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996). Likewise, prisoners have no expectation or privacy in non-legal mail, which may be inspected for contraband. *See Witherow v. Paff*, 52 F.3d 264, 265–66 (9th Cir. 1995) (upholding inspection of outgoing mail); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (upholding inspection of incoming mail); *Gaines v. Lane*, 790 F.2d 1299, 1304–05 (7th Cir. 1986) (upholding inspection of outgoing and incoming mail); *United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir.) (prisons may read inmates' outgoing mail), *cert. denied*, 502 U.S. 951 (1991). Mr. Madkins thus cannot premise a claim on his belief that prison staff read his emails and listened to his phone calls, and amendment of such a claim would be futile.

Mr. Madkins's claim that prison staff failed to protect him from assault and caused him to be assaulted by defaming him as a "snitch" and "informant," may state an Eighth Amendment claim. The failure of prison officials to protect inmates from attacks by other inmates violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively,

United States District Court
Northern District of California

United States District Court
Northern District of California

sufficiently serious; and (2) the prison official is, subjectively, *deliberately* indifferent to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The mental state required to establish a deliberate indifference claim is well-established. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id*. An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *See id*. at 842; *see also Robins v. Meecham*, 60 F.3d 1436, 1439–40 (9th Cir. 1995) (bystander-inmate injured when guards allegedly used excessive force on another inmate need not show that guards intended to harm bystander-inmate). A plaintiff may meet his burden of showing awareness of a risk by presenting evidence of obvious and blatant circumstances indicating that the prison official knew the risk existed. *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) ("risk that an inmate might suffer harm as a result of the repeated denial of meals is obvious"). Spreading the rumor that a prisoner is a snitch may demonstrate deliberate indifference on the part of the rumor-spreading officer. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989). Mr. Madkins therefore may be able to state a cognizable Eighth Amendment claim if he provides more facts. For example, Mr. Madkins should explain which officers spread this rumor, when, and how Mr. Madkins knows that this rumor motivated the attacks upon him.

To the extent Mr. Madkins also wishes to sue officers who did not spread the rumor but who nevertheless observed and failed to stop an attack, Mr. Madkins should identify those officers and explain what they should have done but failed to do.

## II.    Defendants

Mr. Madkins sues Nurse Moorman, correctional officers Hernandez and Varney, and five Doe defendants. Compl. at 1, 2. As explained above, he has not stated a cognizable claim against any of the named defendants. Because the defects are incurable, these defendants are dismissed from this action.

4

United States District Court
Northern District of California

Mr. Madkins does not identify any actions taken by the Doe defendants or explain his theory of liability against these defendants. He therefore has not stated a claim against any Doe defendant at this time. To state a claim against such a defendant on amendment, Mr. Madkins must show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1085 (9th Cir. 2013). To do so, Mr. Madkins must allege that the defendant performed an affirmative act, participated in another's affirmative act, or omitted to perform an act which he is legally required to do, that causes the violation of Mr. Madkins's rights. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see also Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent 8th Amendment violation may be basis for liability). In other words, Mr. Madkins must explain what each defendant did wrong.

Finally, the current state of Mr. Madkins's allegations presents a practical barrier. Although the use of "John Doe" to identify a defendant is not favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), as a practical matter the Court cannot order service of claims against entirely unidentified parties. If he chooses to amend, Mr. Madkins must name at least one defendant he holds responsible for the Eighth Amendment violation discussed above.

## Conclusion

1.    The Complaint is dismissed with leave to amend only as to Mr. Madkins's Eighth Amendment failure-to-protect claim. All other claims are dismissed without leave to amend.

2.    Within thirty-five days of the date this order is filed, Mr. Madkins may file a FIRST AMENDED COMPLAINT. The first amended complaint must include the caption and civil case number used in this order (CV 25-8288-PCP (PR)) and the words FIRST AMENDED COMPLAINT on the first page. If Mr. Madkins files a first amended complaint, he must allege facts that demonstrate he is entitled to relief on his failure-to-protect claim. An amended complaint supersedes the original complaint. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992)

5

(where an amended complaint did not name all the defendants to an action, they were no longer defendants).

3.     **Failure to file an amended complaint within the allotted time and in accordance with this order will result in a finding that further leave to amend would be futile, and this action will be dismissed.** If Mr. Madkins needs an extension of time to amend his complaint, the extension must be requested **before** the deadline to amend has passed.

4.     It is Mr. Madkins's responsibility to prosecute this case. Mr. Madkins must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

5.     Mr. Madkins's applications to proceed *in forma pauperis* are GRANTED. *See* Dkt. Nos. 2, 5, 6. The initial partial filing fee is $77.00. *Compare* 28 U.S.C. § 1915(b)(1) (requiring a court to assess an initial filing fee of 20 percent of a prisoner's average monthly deposits or monthly balance, whichever is greater) *with* Dkt. No. 8 (identifying Mr. Madkins's average monthly deposit). A copy of this order and the attached instructions will be sent to Mr. Madkins via U.S. mail, and to the California Department of Corrections and Rehabilitation (CDCR) and the court's financial office via email at trusthelpdesk@cdcr.ca.gov and CAND_Finance@cand.uscourts.gov.

**IT IS SO ORDERED.**

Dated: June 30, 2026

_____
P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE

The prisoner shown as the plaintiff or petitioner on the attached order has filed a civil action in forma pauperis in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid. If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis and these instructions.

The prisoner's name and case number must be noted on each remittance. The initial partial filing fee is due within thirty days of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:      Plaintiff/Petitioner

Court's Finance Office
United States District Judge

7